UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

```
----------------------------------------X
IN RE:  Letter of Request from the      )
        Tribunal of Bolzano, Italy      )   Miscellaneous Action
        In the Matter of Wierer Gunner  )
        and Rubner Holding AG v. Steiner)   No._____
        Ender Markus et al.             )
----------------------------------------X
```

## COMMISSIONER'S SUBPOENA

TO:  Matthew Amland
     320 Deerwood Drive
     Suwanee, Georgia 30024

I, Commissioner Christopher C. Bly, an Assistant United States Attorney for the Northern District of Georgia, acting under the authority of 28 U.S.C. § 1782, for the purpose of rendering assistance to the Tribunal of Bolzano, Italy, command that you appear before me in Room 600, in the building located at 75 Spring Street, S.W., in the city of Atlanta, in the state of Georgia, on _____, 2011, at _____ a.m./p.m., to provide testimony/documents regarding an alleged violation of:

> The laws of Italy, namely, a claim of compensation, among other alleged violations,

and that at the time and place aforesaid you provide the following:

Oral testimony.

For failure to attend and provide testimony/said documents, you will be deemed guilty of contempt and liable to penalties under the law.

Dated: _____ _____, 2011.



*Model for Letters of Request recommended for use in applying the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*

**Request for International Judicial Assistance pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

*N.B. Under the first paragraph of Article 4, the Letter of Request shall be in the language of the authority requested to execute it or be accompanied by a translation into that language. However, the provisions of the second and third paragraphs may permit use of English, French or another language.*

*In order to avoid confusion, please spell out the name of the month in each date.*

*Please fill out an original and one copy of this form (use additional space if required).*

1. Sender

> TRIBUNAL OF BOLZANO
> DEPARTMENT 1
> JUDGE DOTT. MICHELE PAPARELLA
> PIAZZA DEL TRIBUNALE 1
> 39100 BOLZANO (BZ)
> ITALY

2. Central Authority of the Requested State

> U.S. Department of Justice
> Civil Division
> Office of International Judicial Assistance
> 1100 L Street N.W.
> Room 11006
> Washington, D.C.  20530
> United States of America

3. Person to whom the executed request is to be returned

> TRIBUNAL OF BOLZANO
> DEPARTMENT 1
> JUDGE DOTT. MICHELE PAPARELLA
> PIAZZA DEL TRIBUNALE 1
> 39100 BOLZANO (BZ)
> ITALY

4. Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request

Date

> 31 JULY 2009

Reason for urgency*

---

* Omit if not applicable.

IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED
APPLICANT HAS THE HONOUR TO SUBMIT THE FOLLOWING REQUEST:



5.  a   Requesting judicial
        authority (Article 3, a))

> TRIBUNAL OF BOLZANO
> DEPARTMENT 1
> JUDGE DOTT. MICHELE PAPARELLA
> PIAZZA DEL TRIBUNALE 1
> 39100 BOLZANO (BZ)
> ITALY

    b   To the competent
        authority of (Article 3, a))

> U.S. Department of Justice
> Civil Division
> Office of International Judicial Assistance
> 1100 L Street N.W.
> Room 11006
> Washington, D.C. 20530 (USA)

    c   Names of the case
        and any identifying
        number

> RG n. 4993/2005
> DEPARTMENT 1
> JUDGE DOTT. MICHELE PAPARELLA

6.  Names and addresses of the
    parties and their representa-
    tives (including representa-
    tives in the requested State*)
    (Article 3, b))

    a   Plaintiff

> DR. WIERER GUNNAR and RUBNER HOLDING AG,
> DOMICILED AT THEIR ADVOCATES DR.DIETER
> SCHRAMM and DR. NAUSICAA MALL, VIA DUCA
> SIGISMONDO 1, 39031 BRUNICO (BZ), ITALY

        Representatives

> DR.DIETER SCHRAMM and DR. NAUSICAA MALL
> VIA DUCA SIGISMONDO 1
> 39031 BRUNICO (BZ)
> ITALY

    b   Defendant

> STEINER ENDER MARKUS and ING. THEINER
> HARTMUT, DOMICILED AT THEIR ADVOCATES
> DR.STEFAN THURIN and DR.ELIAN REINSTADLER
> CASSA DI RISPARMIO6, 39031 MERANO (BZ),ITA

        Representatives

> DR. STEFAN THURIN and DR. ELIAN REINSTADLER
> VIA CASSA DI RISPARMIO 6
> 39031 MERANO (BZ)
> ITALY

    c   Other parties

> DR. LEITNER EVI, DOMICILED AT THEIR ADVOCATES
> DR. CHRISTOPH SENONER and DR. MANFRED
> SCHULLIAN, VIA DELLA STAZIONE 5, 39100
> BOLZANO (BZ),ITALY

        Representatives

> DR. CHRISTOPH SENONER and DR. MANFRED
> SCHULLIAN, VIA DELLA STAZIONE 5, 39100
> BOLZANO (BZ),ITALY

* Omit if not applicable.

11. Documents or other property
    to be inspected
    (Article 3, g))*

12. Any requirement that the
    evidence be given on oath
    or affirmation and any
    special form to be used
    (Article 3, h))*

ON OATH

13. Special methods or procedure
    to be followed (e.g. oral or
    in writing, verbatim,
    transcript or summary,
    cross-examination, etc.)
    (Articles 3, i) and 9)*

ORAL WITH COURT REPORTING VERBATIM

14. Request for notification of
    the time and place for the
    execution of the Request
    and identity and address of
    any person to be notified
    (Article 7)*

DR.STEFAN THURIN and DR.ELIAN REINSTADLER
VIA CASSA DI RISPARMIO 6
39031 MERANO (BZ)
ITALY

15. Request for attendance or
    participation of judicial
    personnel of the requesting
    authority at the execution
    of the Letter of Request
    (Article 8)*

---

* Omit if not applicable.

7.  a   Nature of the proceedings (divorce, paternity, breach of contract, product liability, etc.) (Article 3, c))

> CLAIM OF COMPENSATION

    b   Summary of complaint

> SEE ENCLOSURE

    c   Summary of defence and counterclaim*

> SEE ENCLOSURE

    d   Other necessary information or documents*

>

8.  a   Evidence to be obtained or other judicial act to be performed (Article 3, d))

> TAKING OF EVIDENCE - EXAMINATION OF WITNESSES

    b   Purpose of the evidence or judicial act sought

> ORAL TESTIMONY

9.  Identity and address of any person to be examined (Article 3, e))*

> MATTHEW AMLAND
> 320 DEERWOOD DR.
> SUWANEE, GA 30024
> USA

10.  Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined (Article 3, f))*

> SEE ATTACHED LISTS

---

* Omit if not applicable.

16. Specification of privilege
or duty to refuse to give
evidence under the law of
the State of origin
(Article 11, *b*))*

17. The fees and costs incurred
which are reimbursable under
the second paragraph of
Article 14 or under
Article 26 of the Convention
will be borne by*

STEINER ENDER MARKUS and ING. THEINER
HARTMUT, DOMICILED AT THEIR ADVOCATES
DR.STEFAN THURIN and DR.ELIAN
REINSTADLER, VIA CASSA DI RISPARMIO6,
39031 MERANO (BZ),ITALY

DATE OF REQUEST

13 MAY 2009

SIGNATURE AND SEAL OF THE
REQUESTING AUTHORITY

Dr. *Michele Paparella*



**Erase all entries**     **Print**

---

* Omit if not applicable.

STUDIO LEGALE ASSOCIATO
THURIN, VINATZER, ZELLER & PARTNER
I 39012 MERANO
Via Cassa di Risparmio, 6 – TEL: +39 0473 232510
Fax: 0473 232747 – E-Mail: [illegible]
(per la comunicazione degli avvisi)



<u>Art und Gegenstand des Falls und kurze Erläuterung des Sachverhalts:</u>

Mit Klageschrift vom 26.08.2005 wurden die Beklagten Markus Steiner Ender, Ing. Hartmut Theiner und Dr. Evi Leitner von den Klägern Dr. Gunnar Wierer und Rubner Holding AG vor das Landesgericht Bozen (Italien) geladen, damit sie dieses verurteile, den mit insgesamt € 297.000 quantifizierten Schaden zu ersetzen, der den Klägern aufgrund deren Beteiligung am Unternehmen Web.by GmbH, dessen Verwaltungsratsmitglieder Steiner Ender, Ing. Theiner und Dr. Leitner waren, entstanden sei.

Im Besonderen führten die Kläger aus, die Beklagten Steiner Ender, Ing. Theiner und Dr. Leitner hätten ihnen bewusst falsche Informationen über die finanzielle Lage des Unternehmens Webby GmbH gegeben, um sie mit List und Argwohn zu einer Beteiligung an diesem Unternehmen zu überreden. Die Kläger seien aufgrund dieser Beschönigungen der Vermögenssituation der Web.by GmbH mit 15.10.03 anlässlich einer Kapitalerhöhung in dieses Unternehmen eingestiegen. Web.by GmbH habe sich in Folge jedoch trotz relevantem Kapitaleinsatz aller Gesellschafter als nicht liquide gezeigt und seien die Kläger schließlich gezwungen gewesen, im Jänner 2005 die Liquidation des Unternehmens zu beschließen.




Die Beklagten Steiner Ender, Ing. Theiner und Dr. Leitner ließen sich in das Verfahren ein und bestritten sämtliche klägerischen Ausführungen und Anträge sowohl dem Grunde als auch der Höhe nach. Im Besonderen unterstrichen die Beklagten, dass sie bereits vor der Aufnahme der Beitrittsverhandlungen sämtliche Informationen und Unterlagen den an der Beteiligung interessierten Klägern ausgehändigt und weitergegeben haben. Die Kläger waren bestens über das Geschäftsgebaren der Web.by GmbH informiert. Jedenfalls haben die Beklagten niemals bewusst falsche Informationen über die finanzielle Lage weitergegeben. Alle Beklagten beantragten daher die Abweisung der Anträge der Kläger, da sie sachlich und rechtlich unbegründet waren.



STUDIO LEGALE ASSOCIATO
THURIN, VINATZER, ZELLER & PARTNER
I 39012 MERANO
Via Cassa di Risparmio, 6 – TEL: +39 0473 232510
Fax: 0473 232747   E Mail: info@vinatzer.com
(per la comunicazione degli avvisi)







<u>Type and matter of case, as well as short explanation of the facts:</u>

Through the statement of claim dated 26th August 2005, the accused Markus Steiner Ender, Ing. Hartmut Theiner and Dr. Evi Leitner were summoned in front of the Provincial Court of Bozen (Italy) by the plaintiffs Dr. Gunnar Wierer and Rubner Holding AG. The reason was a possible sentence to pay € 297,000.00 in damages, which occurred to the plaintiffs due to their participation in the enterprise Web.by GmbH, whose governing board members were Steiner Ender, Ing. Theiner and Dr. Leitner. The plaintiffs emphasised that the accused Steiner Ender, Ing. Theiner and Dr. Leitner had consciously presented them with false information about the financial situation of the company Web by GmbH in order to cunningly persuade them to invest in this company. Due to this euphemistic description of the financial situation of Web.by GmbH, the plaintiffs joined the firm on 15th October 2003 due to a capital increase. Despite a relevant capital contribution of all partners, Web.by GmbH proved to be insolvent and the accused were finally forced in January 2005 to go into liquidation.

The accused Steiner Ender, Ing. Theiner and Dr. Leitner got involved in the proceedings and denied all comments and applications from the side of the plaintiffs with regard to any




reasoning, as well as the amounts.   In particular, the accused emphasised that they had submitted all information and documentation before the start of the negotiations to the plaintiffs who were interested to invest in the company.  The plaintiffs were well informed about the business policies/practices of Web.by GmbH.   In any case, the accused had at no time consciously given any type of false information about the financial situation of the company.   All the accused proposed the dismissal of the plaintiffs' application, as they were unfounded from a objective and legal view-point.

UFFICIO DEL GIUDICE DI PACE DI

MERANO



FRIEDENSGERICHT

MERAN

Cron. n./ Chron. Nr. 507/09

## <u>VEREIDIGUNGSPROTOKOLL – SWEARING IN TRANSCRIPT</u>

Am __1 4. 05. 09__ ist vor dem Unterfertigten Kanzleileiter die Übersetzerin Frau **ZANAGA Claudia, geb. am 05.01.1966 in Meran (BZ)** erschienen, identifiziert mittels folgendes Dokumentes:

Identitätskarte Nr. **AA 773133**, ausgestellt von der Gemeinde Meran und gültig bis 03.05.2010,

um die beiliegende Übersetzung zu beeidigen.

Der Unterfertigte Kanzleileiter hat die Übersetzerin über die strafrechtlichen Folgen belehrt und sie aufgefordert, den folgenden Eid in der gesetzlich vorgesehenen Form zu leisten:

"ICH SCHWÖRE DIE MIR ANVERTRAUTEN AUFGABEN NACH BESTEN WISSEN UND GEWISSEN ERFÜLLT ZU HABEN, ALLEIN ZUM ZWECK DEM GERICHT DIE WAHRHEIT ZU VERMITTELN".

G.G.U.

DIE ÜBERSETZERIN

---

On __1 4. 05. 09__ the translator **ZANAGA Claudia, born on 5th of January 1966 in Meran (Bolzano)**, identified by the following document:

Nationl Identity Card no. **AA 773133**, issued by the town of Meran and valdi until the 3rd of May 2010,

appeared before the signatory head solicitor in order to swear-in the attached translation.

The signatory head solicitor informed the translator about the consequences under criminal law, and insturcted her to take the following oath in the statutory form:

"I SWEAR TO HAVE FULFILLED THE TASKS ASSIGNED TO ME TO THE BEST OF MY KNOWLEDGE; FOR THE SOLE PURPOSE OF BRINGING THE TRUTH TO THE COURT'S ATTENTION2.

READ; APPROVED AND SIGNED
THE TRANSLATOR

---

**THE HEAD SOLICITOR**

Il Cancelliere / Der Kanzleileiter
Ingrid Bazzanella

Ingrid Bazzanella



ANWALTSSOZIETÄT

**THURIN, VINATZER, ZELLER & PARTNER**

I 39012 MERAN

SPARKASSENSTR . 6 - TEL. +39 0473 232510

FAX: 0473 232747 - E-Mail: office@tvzlaw.com

(für die Übermittlung der Verständigungen)



Beweiskapitel der Beklagten Steiner Ender und Ing. Theiner:

1) Ist es wahr, dass die Web.by GmbH ihre Büroräumlichkeiten mit der PHP GmbH und der Maguma GmbH teilte?

2) Ist es wahr, dass die Geschäftsunterlagen der Web.by GmbH somit allen Mitarbeitern und auch Herrn Wierer frei zugänglich waren.

3) Ist es wahr, dass die Mitarbeiter der Web.by GmbH seit dem räumlichen Zusammenschluss der Firmen Web.by und PHP/Maguma für die PHP/Maguma GmbH und somit für Herrn Wierer gearbeitet haben, Web.by die entsprechenden Kosten trug und die PHP/Maguma die Leistungen an ihre Kunden verrechnete?

4) Ist es wahr, dass Dr. Wierer selbst bei Aufträgen der Web.by GmbH mit dieser zusammengearbeitet hat und an entsprechenden Kundengesprächen persönlich anwesend war?

5) (nicht zugelassen)

6) Ist es wahr, dass Herr Steiner Ender seit dem räumlichen Zusammenschluss der Firmen Web.by und PHP/Maguma, auf Kosten der Web.by GmbH, für die Kunden der PHP/Maguma GmbH die Softwareeinschulung von Softwareprodukten übernommen hat, die von der PHP/Maguma GmbH entwickelt und verrechnet wurden?

7) Ist es wahr, dass die Idee des Zusammenschlusses der Gesellschaften oder Quotenkaufes von Dr. Wierer ausging.

8) Ist es wahr, dass Dr. Wierer Einblick in sämtliche Gesellschaftsunterlagen gewährt wurde?

9) Ist es wahr, dass bei den Beitrittsverhandlungen zwischen der



Web.by GmbH und den Klägern auch die drei Wirtschaftsberater Dr. Schönweger, Dr. Ziernhöld und Dr. Knollseisen anwesend waren?

10) Ist es wahr, dass sich die Kläger von genannten drei Fachleuten beraten ließen?

11) (nicht zugelassen)

12) Ist es wahr, dass die Beklagten auch vom Wirtschaftsunternehmen Dun & Bradstreet eine Unternehmensbewertung der Web.by erstellen ließen und diese lange vor der Kapitalerhöhung an die Kläger gaben?

13) Ist es wahr, dass die Beklagten Steiner Ender und Ing. Theiner die Kläger auf größere Außenstände in der Bilanz und fehlende Daten in den Unternehmensbewertungen ausdrücklich hingewiesen haben?

14) Ist es wahr, dass die in der Bilanz als Aktiva ausgewiesene Software nicht mehr vermarktet werden konnte, da sie in Absprache mit und auf Anraten von Herrn Wierer auf open source gestellt wurde?

15) Ist es wahr, dass die Beklagten Steiner Ender und Ing. Theiner im Zuge der Beitrittsverhandlungen Skepsis ob einer Weiterführung der Gesellschaft geäußert haben?

16) Ist es wahr, dass Dr. Wierer die Sanierung der Gesellschaft in Aussicht gestellt hatte und dazu die Beklagten Steiner Ender und Ing. Theiner zu weiteren Zahlungen aufforderte?

17) Ist es wahr, dass die Beklagten Steiner Ender und Ing. Theiner ihren im Zuge der Kapitalerhöhung gezeichneten Quotenanteil von



insgesamt 20% selbst einzahlten?

18) Ist es wahr, dass Dr. Ziernhöld angeraten hat, über die Gesellschaft den Konkurs anzumelden?

19) Ist es wahr, dass Dr. Wierer auf eine Weiterführung des Betriebes bestanden hat?

20) Ist es wahr, dass der gesamte Kundenstock der Web.by GmbH an die Simply Open GmbH übertragen wurde?

21) Ist es wahr, dass Aufträge an die Web.by GmbH von Seiten der Simply Open GmbH fakturiert werden?

22) (nicht zugelassen)

23) Ist es wahr, dass sämtliche von der Web.by GmbH ausgestellten Rechnungen bereits erbrachte Leistungen zum Inhalt hatten?

24) Ist es wahr, dass der Beklagte Steiner Ender das Anlagevermögen der Web.by GmbH bewertet hat, um es an die Maguma GmbH bzw. an Dr. Wierer zu verkaufen?

<u>Gegenbeweis über die Beweiskapitel der Kläger Dr. Wierer und Rubner</u>
<u>Holding AG:</u>

1) Ob es wahr ist, dass Herr Dr. Franz Josef Schönweger im Zeitraum 2002 und 2003, sowie für die Bilanzerstellung 2003, der verantwortliche Steuer- und Wirtschaftsberater der Web.by GmbH war;

2) Ob es wahr ist, dass derselbe in dieser Funktion sowohl die ordentliche Buchhaltung führte, als auch die Bilanz zum 31.12.2002, zum 26.09.2003 und 31.12.2003 erstellte, und zwar auf Grundlage der demselben von der Web.by übermittelten Daten;



- 3 -





3) (nicht zugelassen)

4) (nicht zugelassen)

5) Ob es wahr ist, dass das in der Bilanz zum 26.09.2003 als Vermögen verbuchte Produkt (aktivierte Eigenleistung) der Web.by nicht mehr vermarktet wurde und daher wertlos war und diese Tatsache den Beklagten bereits vor dem Oktober 2003 bekannt war;

6) Ob es wahr ist, dass die in der Bilanz zum 26.09.2003 ausgewiesene Kundenforderung entweder uneinbringlich waren oder nur mittels zusätzlicher Dienstleistungen eintreibbar wurden;

7) Ob es wahr ist, dass im Jahre 2002 Rechnungen für nicht erbrachte Leistungen ausgestellt und verbucht wurden;

8) (nicht zugelassen)

9) Ob es wahr ist, dass gegen die Web.by GmbH auch noch Forderungen des ehemaligen Wirtschaftsberaters Dr. Franz Josef Schönweger über ca. Euro 22.222,00 bestanden und Forderungen der Fa. PHP GmbH über ca. Euro 24.000,00.

ANWALTSSOZIETÄT

THURIN, VINATZER, ZELLER & PARTNER
I 39012 MERAN
SPARKASSENSTR . 6 - TEL. +39 0473 232510
FAX: 0473 232747 – E-Mail: office@tvzlaw.com
(für die Übermittlung der Verständigungen)





**Evidence of the accused Steiner Ender and Ing. Theiner:**

1) Is it true, that the company Web.by GmbH shared their offices with PHP GmbH and Maguma GmbH?

2) Is it true, that all business documentation of Web.by GmbH was therefore freely available to all personnel, as well as Mr Wierer?



3) Is it true, that - since the begin of working together in the same offices - the staff of Web.by GmbH and PHP/Maguma have worked for the company PHP/Maguma GmbH and, therefore, for Mr Wierer; that Web.by carried the relevant costs and that PHP/Maguma invoiced these costs to its customers?

4) Is it true, that Dr. Wierer himself was involved in orders for Web.by GmbH and was present in relevant meetings with clients?

5) (not approved)

6) Is it true, that -- since beginning to work in the same offices between the companies Web.by and PHP/Maguma - Mr Steiner Ender, at the expense of Web.by GmbH, has taken care of the software training for software products for the customers of PHP/Maguma GmbH, which was developed and invoiced by PHP/Maguma GmbH?

7) Is it true, that the idea of the merger of the companies or share buying was initiated by Dr. Wierer?

8) Is it true, that Dr. Wierer was allowed to access all company documentation?

9) Is it true, that during the negotiations between Web.by GmbH and



the plaintiffs, there were also three economic advisers present, i.e. Dr. Schönweger, Dr. Ziernhöld and Dr. Knollseisen?

10) Is it true, that the plaintiffs were advised by the three above-named professionals?

11) (not approved)

12) Is it true, that the accused asked the economic expert company Dun & Bradstreet to prepare a company due diligence analysis of Web.by and that this document was submitted to the plaintiffs some time before the capital increase?

13) Is it true, that the accused Steiner Ender and Ing. Theiner have explicitly pointed out some larger outstanding accounts in the balance sheet, as well as missing data in the analysis to the plaintiffs?

14) Is it true, that the 'activa' software shown on the balance sheet could not be marketed any more as it was moved to 'open source' in agreement with and on the advice of Mr Wierer?

15) Is it true, that the accused Steiner Ender and Ing. Theiner have expressed their scepticism regarding the continuation of the company in the course of the negotiations?

16) Is it true, that Dr. Wierer held out the prospect of restoration of profitability of the company and that the accused Steiner Ender and Ing. Theiner were asked to make further payments?

17) Is it true, that the accused Steiner Ender and Ing. Theiner have paid themselves their part of the shares (with a total of 20%) within the capital increase?

18) Is it true, that Dr. Ziernhöld had advised to file for bankruptcy?

- 2 -





19) Is it true, that Dr. Wierer had insisted on a continuation of the company?

20) Is it true, that the entire clientele of Web.by GmbH was transferred to the company Simply Open GmbH?

21) Is it true, that orders for Web.by GmbH were invoiced by Simply Open GmbH?

22) (not approved)

23) Is it true, that all invoices written by Web.by GmbH referred to services already supplied?

24) Is it true, that the accused Steiner Ender had evaluated the fixed assets of Web.by GmbH in order to sell these to the company Maguma GmbH or to Dr. Wierer?

Counter evidence of the plaintiffs Dr. Wierer and Rubner Holding AG:

1) Could it be true, that during the period of 2002 and 2003, as well as for the drawing up of the balance sheet in 2003, Dr. Franz Josef Schönweger was the responsible economic and taxation adviser of the Web.by GmbH?

2) Could it be true, that the same person in the same function drew up the proper book-keeping, as well as the balance sheet to 31/12/2002, 26/09/2003 and 31/12/2003, namely on the basis of the given data by Web.by?

3) (not approved)

4) (not approved)

5) Could it be true, that the product (active personal contribution) entered as an asset into the balance sheet 26/09/2003, was no





longer marketed by Web.by and, therefore, was without value and that this fact was known to the accused before October 2003?

6) Could it be true, that the listed outstanding customer debts in the balance sheet 26/09/2003 were either bad debts or could only be collected with the help of additional services?

7) Could it be true, that invoices were written in 2002, which referred to non delivered services and were booked as such?

8) (not approved)

9) Could it be true, that there were outstanding debts against the Web.by GmbH from the former economic adviser Dr. Franz Josef Schönweger for a sum of around € 22,222.00, as well as outstanding debts of the company PHP GmbH for around € 24,000.00?

UFFICIO DEL GIUDICE DI PACE DI    FRIEDENSGERICHT

MERANO    MERAN

Cron. n./ Chron. Nr. 508/09

## VEREIDIGUNGSPROTOKOLL – SWEARING IN TRANSCRIPT

| | |
|---|---|
| Am **1 4. 05. 09** ist vor dem Unterfertigten Kanzleileiter die Übersetzerin Frau **ZANAGA Claudia, geb. am 05.01.1966 in Meran (BZ)** erschienen, identifiziert mittels folgendes Dokumentes: Identitätskarte Nr. **AA 773133**, ausgestellt von der Gemeinde Meran und gültig bis 03.05.2010, um die beiliegende Übersetzung zu beeidigen. Der Unterfertigte Kanzleileiter hat die Übersetzerin über die strafrechtlichen Folgen belehrt und sie aufgefordert, den folgenden Eid in der gesetzlich vorgeschenen Form zu leisten: | On **1 4. 05. 09** the translator **ZANAGA Claudia, born on 5th of January 1966 in Meran (Bolzano)**, identified by the following document: Nationl Identity Card no. **AA 773133**, issued by the town of Meran and valdi until the 3rd of May 2010, appeared before the signatory head solicitor in order to swear-in the attached translation. The signatory head solicitor informed the translator about the consequences under criminal law, and insturcted her to take the following oath in the statutory form: |
| "ICH SCHWÖRE DIE MIR ANVERTRAUTEN AUFGABEN NACH BESTEN WISSEN UND GEWISSEN ERFÜLLT ZU HABEN, ALLEIN ZUM ZWECK DEM GERICHT DIE WAHRHEIT ZU VERMITTELN". | "I SWEAR TO HAVE FULFILLED THE TASKS ASSIGNED TO ME TO THE BEST OF MY KNOWLEDGE; FOR THE SOLE PURPOSE OF BRINGING THE TRUTH TO THE COURT'S ATTENTION2. |
| G.G.U. | |
| DIE ÜBERSETZERIN | READ; APPROVED AND SIGNED THE TRANSLATOR |





**THE HEAD SOLICITOR**
Il Cancelliere / Der Kanzleileiter
Ingrid Bazzanella
*Ingrid Bazzanella*